1
2
3
4
5
6
7                          UNITED STATES DISTRICT COURT

8                          CENTRAL DISTRICT OF CALIFORNIA

9
10
11                                          )
     JEFF BERGER,                           )    CASE NO. CV 08-02318 MMM (AGRx)
12                                          )
                    Plaintiff,              )
13                                          )    ORDER GRANTING PLAINTIFF'S
              vs.                           )    MOTION TO REMAND; DENYING
14                                          )    REQUEST FOR ATTORNEY'S FEES AND
     HARLEY ELLIS DEVEREAUX; a              )    COSTS
15   Michigan Corporation; and PETER        )
     DEVEREAUX, an individual residing in   )
16   California; and DOES 1-20,             )
                                            )
17                  Defendants.             )
                                            )
18                                          )
                                            )
19   _____

20         On November 29, 2007, plaintiff Jeff Berger commenced an action in Los Angeles Superior

21   Court against corporate defendant Harley Ellis Devereaux, individual defendant Peter Devereaux, and

22   certain fictitious defendants.  On April 8, 2008, Defendants removed the action to this court, invoking

23   the court's diversity jurisdiction under 28 U.S.C. §§ 1332 and 1441(b).  On June 9, 2008, plaintiff filed

24   a motion to remand the action to state court under 28 U.S.C. § 1447(c).

25                              **I.  FACTUAL BACKGROUND**

26   **A.       Plaintiff's Complaint**

27   Defendant Harley Ellis Devereaux ("HED"), a Michigan corporation, employed plaintiff Jeff

28

Berger as the Western Regional Human Resources Leader.[1]  Co-defendant Peter Devereaux ("Devereaux"), a California resident, is the president of HED.[2]  Berger, also a California resident, alleges that HED breached an implied contract not to terminate him except for good cause.[3]  He also alleges that HED wrongfully terminated him, discriminated on the basis of sexual orientation, and terminated him in retaliation for complaints about its discriminatory practices.[4]  Finally, Berger asserts that Devereaux defamed him in an email following his termination, conduct for which he seeks to impose joint liability on Devereaux and HED.[5]

HED's predecessor, Fields Devereaux (not a party in this action), hired Berger in September 2001.[6]  Berger received consistently positive performance reviews and raises, and was promoted in December 2005.[7]  In January 2006, Fields Devereaux merged to form HED.[8]  Plaintiff alleges that in July 2007, defendant Devereaux provided oral assurances that Berger would have a bright future with HED.[9]  Berger contends alleges that the positive performance reviews, oral assurances, and raises gave rise to an implied contract that HED would not terminate his employment without good cause.[10]

Following the merger, the company acquired new executive decision makers in Michigan,

---

[1]Complaint, ¶¶ 2, 4.

[2]*Id.*, ¶¶ 1, 3.

[3]*Id.*, ¶¶ 7-8.

[4]*Id.*, ¶¶ 26-27, 11-13, 19-20.

[5]*Id.*, ¶¶ 32-36.

[6]*Id.*, ¶ 6.

[7]*Id.*

[8]*Id.*

[9]*Id.*

[10]*Id.*, ¶ 7.

whom Berger alleges were not compliant with California law.[11] He asserts, for example, that HED improperly characterized workers as independent contractors rather than employees and did not pay overtime to workers for mandatory training.[12]   In his capacity as Western Regional Human Resources Leader, plaintiff advised HED of its need to comply with California law on several occasions.[13]   He asserts that on June 15, 2007, his (then) manager was terminated under circumstances suggesting that the motivation for the termination was the fact that the manager was a homosexual.[14]

On December 4, 2007, HED terminated Berger, although there was no written documentation of poor performance in his personnel file.[15]   Berger, who is homosexual, asserts that sexual orientation discrimination was a motivation for his termination, and that his termination was consistent with HED's pattern and practice of sexual orientation discrimination following the merger.[16]   Berger also contends that he was terminated in retaliation for his continuous opposition to HED's improper employment practices.[17]

Following Berger's termination, on December 4, 2007, Devereaux sent an email notifying employees that Berger would "no longer be employed as the West Regional Human Resources Representative."[18]   The email identified the individual whom staff should contact regarding HR concerns "[u]ntil [HED staff members] are able to hire a more experienced HR Professional – ideally in the West Region – who would be capable of directing the HR system for our entire

---

[11]*Id.*, ¶ 11.

[12]*Id.*

[13]*Id.*, ¶ 19.

[14]*Id.*, ¶ 11.

[15]*Id.*; Supplemental Declaration of Jeff Berger ("Berger Supp. Decl."), ¶ 2.

[16]Complaint, ¶¶ 11-12.

[17]*Id.*, ¶¶ 19-20.

[18]*Id.*, ¶ 32; Declaration of Peter Devereaux in Support of Removal of Action Under 28 U.S.C. §§ 1332 and 1441(b) ("Devereaux Removal Decl."), Exh. 1.

3

organization."[19]  Devereaux sent the email to all of the employees (totaling more than one hundred) at three of HED's California offices.[20]  Plaintiff alleges the email was not marked confidential and that a former employee also received a copy.[21]  Following the email, Berger allegedly spoke to or received emails from at least four managerial employees and several non-managerial employees, who said or suggested that they believed the email insinuated he had performed poorly in his job.[22]  Berger believes the email suggests he is "incapable" and "inexperienced," and alleges that it is defamatory.[23]

On November 29, 2007, plaintiff commenced an action in Los Angeles Superior Court asserting the following claims: (1) breach of implied contract not to terminate except for good cause; (2) sexual orientation discrimination under California Government Code § 12940(a); (3) retaliation under California Government Code § 12940(h); and (4) wrongful termination in violation of public policy.  Against both HED and Devereaux in his individual capacity, Berger asserts a claim for defamation.  He seeks past and future lost wages, emotional distress damages, punitive and exemplary damages, and attorney's fees.[24]

### B.     The Removal

On April 8, 2008, HED and Devereaux removed the action under 28 U.S.C. § 1441(b), alleging that there is diversity jurisdiction under 28 U.S.C. § 1332.  Both Berger and Devereaux are citizens of California, while HED is a Michigan corporation.[25]  A non-diverse party may be

---

[19]Devereaux Removal Decl., Exh. 1.

[20]Complaint, ¶¶ 34-35.

[21]Declaration of Jeff Berger ("Berger Decl."), ¶ 9.  Defendants object to these statements in Berger's declaration on hearsay grounds.  (See Objections to Plaintiff Jeff Berger's Declaration in Support of Motion to Remand ("Def.'s Objections"), ¶¶ 2-6).  The court addresses these objections *infra*.

[22]*Id.*, ¶¶ 4-8.

[23]Complaint, ¶¶ 33-34.

[24]*Id.*, ¶¶ 9, 14-16, 21-23, 28-30, 35-38.

[25]Complaint, ¶¶ 1-6; Notice of Removal, ¶ 6-7.

disregarded for purposes of determining whether jurisdiction exists, however, if the court determines that the party's joinder was "fraudulent" or a "sham." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001); *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998); *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir 1987).

Defendants assert that Devereaux is a sham defendant, whom Berger added for the purpose of destroying diversity jurisdiction.[26]  Defendants note that Berger asserted a single claim against Devereaux, while pleading five against HED.[27]  They also note that the defamation claim pertains only to a single email, and argue that the communication on its face does not support the cause of action.[28]  Defendants add that plaintiff's complaint makes no reference to any other statements made by Devereaux.[29]  Because, in defendants' view, Devereaux is a sham defendant against whom a genuine claim has not been asserted, they contend his non-diverse citizenship can be disregarded in assessing whether federal diversity jurisdiction is present.[30]

Berger contends the defamation claim is genuine; as a result, on June 9, 2008, he filed a motion to remand the case to state court and requested attorney's fees.[31]

## II.  DISCUSSION

### A.    Standard Governing Removal to Federal Court Based on Diversity Jurisdiction

Unless expressly excepted by some other federal statute, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division

---

[26]Notice of Removal, ¶¶ 7, 9.

[27]*Id.*, ¶ 9.

[28]*Id.*, ¶ 10.

[29]*Id.*, ¶ 9.

[30]*Id.*, ¶ 7.

[31]Plaintiff's Notice of Motion & Motion for Remand and for Attorneys Fees Pursuant to 29 U.S.C. § 1447(c) ("Pl.'s Mot.") at 4-6.

embracing the place where such action is pending." 28 U.S.C. § 1441(a).  District courts have original

diversity jurisdiction over civil actions between citizens of different states where the matter in

controversy exceeds $75,000.  *Id.*, § 1332(a).  An action may be removed on diversity grounds "only

if none of the parties in interest properly joined and served as defendants is a citizen of the State in

which such action is brought."  *Id.*, § 1441(b).  Remand is mandatory "[i]f at any time before final

judgment it appears that the district court lacks subject matter jurisdiction."  *Id.*, § 1447(c).

A defendant may remove a state court suit to federal court only if the court would have had

jurisdiction over the action had it been originally filed in federal court.  28 U.S.C. § 1441(a); *Snow v.*

*Ford Motor Co.*, 561 F.2d 787, 789 (9th Cir. 1977).  A federal court has subject matter jurisdiction

based on diversity if there is complete diversity of citizenship between the parties and the amount in

controversy exceeds $75,000.  28 U.S.C. § 1332(a).  The party asserting jurisdiction bears the burden

of proving all jurisdictional facts by a preponderance of the evidence.  *In re Ford Motor Co./Citibank*

*(South Dakota)*, 264 F.3d 952, 957 (9th Cir. 2001). As noted, defendants here assert that the court has

diversity jurisdiction because the addition of Devereaux as a defendant was a sham.[32]

### B.    Standard for Determining Whether Defendant is a Sham Defendant

A non-diverse party may be disregarded for purposes of determining whether jurisdiction

exists if the court determines that the party's joinder was "fraudulent" or a "sham."  *Morris*, 236

F.3d at 1067.[33]  The relevant inquiry is whether plaintiff has failed to state a cause of action against

the non-diverse defendant, *and* the failure is obvious under settled state law.  *Id.*; *McCabe*, 811 F.2d

at 1339; see also *Good v. Prudential Ins. Co. of America*, 5 F.Supp.2d 804, 807 (N.D. Cal. 1998)

(defendant must persuade the court "there is no possibility that plaintiff will be able to establish a

cause of action in State court against the alleged sham defendant"); *Zogbi v. Federated Dept. Store*,

767 F.Supp. 1037, 1041-42 (C.D. Cal. 1991) (concluding that defendants' joinder was a sham

---

[32]Defendants argue that plaintiff's claim exceeds the $75,000 amount-in-controversy threshold, although plaintiff's complaint does not specify the total amount of damages sought.  (Notice of Removal, ¶¶ 14-18).  Plaintiff did not dispute this assertion in his motion to remand.

[33]The term "fraudulent joinder" is a term of art, and does not connote any intent to deceive on the part of plaintiffs or their counsel.  *Lewis v. Time Inc.*, 83 F.R.D. 455, 460 (E.D. Cal. 1979), aff'd., 710 F.2d 549 (9th Cir. 1983).

because California law was "well settled" that no claim for breach of contract could be stated against them).

The removing defendant bears a heavy burden in attempting to demonstrate that a non-diverse defendant's joinder is a "sham." *Jernigan v. Ashland Oil Co.*, 989 F.2d 812, 815-16 (5th Cir. 1993); *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990); *Green v. Amerada Hess Corp.*, 707 F.2d 201, 205 (5th Cir. 1983), cert. denied, 464 U.S. 1039 (1984). In assessing whether joinder is fraudulent, the court must resolve all disputed questions of fact, and all ambiguities in controlling state law, in favor of the non-removing party. *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42-43 (5th Cir. 1992); *Good*, 5 F.Supp.2d at 807. All doubts concerning the sufficiency of a cause of action because of inartful, ambiguous, or technically defective pleading must also be resolved in favor of remand, and a lack of clear precedent supporting a claim will not render the joinder fraudulent. *Gaus v. Miles, Inc*., 980 F.2d 564, 566-67 (9th Cir. 1992); *Lieberman v. Meshkin, Mazandarani*, No. C-96-3344, 1996 WL 732506, * 3 (N.D. Cal. Dec. 11, 1996).

The analysis used to resolve a fraudulent joinder motion is similar to that employed in deciding motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. See *Ritchey*, 139 F.3d at 1319 (citing with approval decisions that employed a Rule 12(b)(6) standard in analyzing fraudulent joinder, including *McCabe*, 811 F.2d at 1339; *Kruso v. International Telephone & Telegraph Corp*., 872 F.2d 1416, 1426-27 (9th Cir.1989); and *Sessions v. Chrysler Corp.*, 517 F.2d 759, 761 (9th Cir.1975)); see also *McKee v. Kansas City Southern Railway Co.*, 358 F.3d 329, 334 (5th Cir. 2004) (". . . for fraudulent joinder, the district court may 'pierce the pleadings' and consider summary judgment-type evidence in the record, but must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff. . . . Therefore, although the type of inquiry into the evidence is similar to the summary judgment inquiry, the district court is not to apply a summary judgment standard but rather a standard closer to the Rule 12(b)(6) standard"). "To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint generally must satisfy only the minimal notice pleading requirements of Rule 8(a)(2)." *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003).

### C.      Whether Plaintiff has Stated a Defamation Claim

To determine whether Devereaux is a sham defendant, the court must examine whether Berger has pled sufficient facts to establish each element of a defamation claim against him.  Cf. *Diaz v. Allstate Ins. Group.*, 185 F.R.D. 581, 589-91 (C.D. Cal. 1998) (holding that removal of a conspiracy claim was not appropriate where plaintiff pleaded  sufficient facts to establish each element of the conspiracy claim).

Defamation includes both libel and slander.  CAL. CIV. CODE § 44.  Slander is oral while libel requires a publication.  *Joel v. Valley Surgical Center,* 68 Cal.App.4th 360, 372 (1998).  Because Devereaux's statement was included in an email, it would, if defamatory, constitute libel.  To state a libel claim, plaintiff must establish that defendant (1) made a publication of (2) defamatory, (3) false, and (4) unprivileged statements, (5) which ha[d] a natural tendency to injure or that cause[d] special damage.  CAL. CIV. CODE § 45; *Taus v. Loftus,* 40 Cal.4th 683, 720 (2007); *Ringler Associates v. Maryland Cas. Co.*, 80 Cal.App. 4th 1165, 1179 (2000).

### 1.      Publication

The publication element of the tort requires that defendant have communicated a statement to a third party who understood the defamatory meaning of the statement and the person to whom reference was made.  *Sesler v. Montgomery*, 78 Cal. 486, 487 (1889)*; Neary v. Regents of University of California*, 185 Cal. App. 3d 1136, 1147 (1986); see also *Ringler*, 80 Cal. App.4th at 1179.  Publication does not require that the statement be made to the public at large; communication to a single person is sufficient.  *Raghavan v. Boeing Co.*, 133 Cal.App.4th 1120, 1132 (2005); *Smith v. Maldonado*, 72 Cal.App.4th 637, 645 (1999) (citing *Cunningham v. Simpson*, 1 Cal.3d 301, 306 (1969)).  Email is a medium through which a publication can be made.  See, e.g., *SDV/ACCI, Inc. v. AT & T Corp.*, 522 F.3d 955, 964 (9th Cir. 2008) (discussing alleged defamation in an email); *Troy Group, Inc. v. Tilson*, 364 F.Supp.2d 1149, 1155-56 (C.D. Cal. 2005) (same).  Berger alleges that Devereaux sent an email on December 4, 2007 to employees at multiple HED offices; defendants do not dispute this.[34]  Berger has thus sufficiently pled the publication element.

---

[34]Complaint, ¶¶ 32-38; Notice of Removal, ¶¶ 9, 10.

1

## 2.      False Statement

2        The false statement element requires an allegation that the statement was untrue. *Gilbert v. Sykes*,

3   147 Cal.App.4th 13, 27 (2007) (holding that a statement's truth is a complete defense against liability

4   for defamation, regardless of any alleged malicious purpose); *Terry v. Davis Community Church*, 131

5   Cal.App.4th 1534, 1553 (2005) (evaluating an allegedly defamatory email, and holding that truth was

6   a complete defense).   The falsity must be substantial; an allegedly defamatory statement is not

7   considered false unless it "would have a different effect on the mind of the reader from that which the

8   . . . truth would have produced."   *Carver v. Bonds*, 135 Cal.App.4th 328, 345 (2005) (quoting *Masson*

9   *v. New Yorker Magazine,* 501 U.S. 496, 516-17 (1991)); see also *Wilson v. Parker, Covert & Chidester*,

10  28 Cal.4th 811, 821 (2002); *Vogel v. Felice*, 127 Cal.App.4th 1006, 1021 (2005).

11        Here, Devereaux's email stated that Berger was no longer employed as the West Region Human

12  Resources Representative for HED and that HED was seeking a "more experienced HR Professional

13  . . . in the West Region – who would be capable of directing the HR system for [the] entire

14  organization."[35]   Berger alleges that this communication is substantially false because, in stating that the

15  company would seek an HR representative who was "experienced" and "capable," Devereaux

16  necessarily implied that he was incompetent.[36]   Cf. *Gould v. Maryland Sound Industries, Inc.*, 31

17  Cal.App.4th 1137, 1153 (1995) ("Slander is 'a false and unprivileged publication, orally uttered, . . .

18  which [*inter alia,*] tends directly to injure [a person] in respect to his office, profession, trade or

19  business, either by imputing to him general disqualification in those respects which the office or other

20  occupation peculiarly requires, or *by imputing something with reference to his office, profession, trade*

21  *or business* that has a natural tendency to lessen its profits [or] which, by natural consequence, causes

22  actual damage,'" quoting CAL. CIV. CODE § 46 (emphasis added)); see also CAL. CIV. CODE § 45 ("Libel

23  is a false and unprivileged publication by writing . . .which has a tendency to injure him in his

24  occupation").   Plaintiff pleads that he was competent by alleging that during the six years he worked in

25  HED's Human Resources department, his salary doubled, and he received raises and positive

26

27        [35]Complaint, Exh. 1.

28        [36]*Id.*, ¶¶ 33-34.

9

1   performance reviews.[37]

2       Although defendants concede Berger received positive performance reviews,[38] defendants

3   dispute the validity of those reviews.  They suggest the reviews were not accurate representations of

4   Berger's qualifications, because his former supervisor, who wrote the evaluations, was "protecting"

5   him.[39]  Defendants note that after this supervisor left the company, "it soon became obvious that the

6   plaintiff was not qualified to fill the position as West Region Human Resource Leader.  Plaintiff could

7   not grasp the day to day administrative requirements of his position."[40] Defendants allege, for example,

8   that Berger failed to complete an assignment that Devereaux gave him in August 2007, and failed to

9   keep Devereaux informed about new hires and terminations on at least one specific occasion after he

10  had been "repeatedly" reminded to do so.[41]

11      In addition, defendants allege, the email was true in that HED was not seeking a replacement for

12  Berger, but a more experienced employee to handle HR operations for the "entire organization."[42]

13  Consistent with this expressed interest in a "more experienced" human resources employee, defendants

14  state, HED subsequently hired a human resources professional with a graduate degree and eighteen years

15  of experience in the field for a corporate HR position.[43]     Whether Berger's performance reviews

16  accurately reflected his job performance and qualifications is a question of fact.[44]  So too is the truth or

17

18      [37]Id., ¶¶ 6-7.

19      [38]See Defendants' Opposition to Motion for Remand ("Def.'s Opp.") at 3.

20      [39]Id.

21      [40]Id.

22

23      [41]Declaration of Peter Devereaux ("Devereaux Decl."), ¶¶ 5-7; see also Def.'s Opp. at 3-5
    (discussing problems identified about plaintiff by his immediate supervisor in 2007).

24      [42]Def.'s Opp. at 10;Devereaux Removal Decl., ¶ 5.

25      [43]Devereaux Decl., ¶ 5.

26

27      [44]Devereaux's statements regarding Berger's performance are disputed, and no documentation
    of negative performance reviews exists.  (See Berger Supp. Decl., ¶ 2.)  Although defendants identify
    various performance problems purportedly identified by Berger's immediate supervisor, Carol Coon,
28  they submit no admissible evidence supporting the allegations.  (See id. at 3-4).

1  falsity of the suggestion in Devereaux's email that Berger was inexperienced and/or incompetent.[45]

2  As noted, when a plaintiff shows that there is a *possibility* he will prevail on a claim against a

3  non-diverse defendant, removal is not proper and remand is required.  See *Cavallini v. State Farm*

4  *Mutual Auto Ins. Co.*, 44 F.3d 256, 259 (5th Cir. 1995).  In assessing whether joinder is fraudulent,

5  questions of fact must be resolved in favor of the party seeking remand.  *Dodson*, 951 F.2d at 42-43.

6  Here, viewing the facts in the light most favorable to Berger, there is a question of fact as to whether

7  the salary increases and positive performance reviews he received over the course of six years shows

8  that Devereaux's statements in the email about his competence were substantially false.  Berger,

9  therefore, has demonstrated that there is a possibility he will be able to prove this element of the claim

10  at trial.

11  ### 3.    Defamatory

12  A statement is defamatory if it can be reasonably viewed as declaring or implying a factual

13  assertion that tends to harm the reputation of another so as to lower him in the estimation of the

14  community or deter third parties from associating or dealing with him.  *Forsher v. Bugliosi*, 26 Cal.3d

15  792, 803 (1980); *Cameron v. Wernick,* 251 Cal.App.2d 890, 893 (1967); see also *Krinsky v. Doe 6*, 159

16  Cal.App.4th 1154, 1173 (2008) ("In Florida, as in California, defamation consists of 'an unprivileged

17  publication of false statements which naturally and proximately result in injury to another.'  *Wolfson*

18  *v. Kirk*, 273 So.2d 774, 776 (Fla. Dist. Ct.  App. 1973). 'In other words, such a communication is

19  defamatory if it tends to harm the reputation of another as to lower him or her in estimation of

20  community or deter third persons from associating or dealing with the defamed party,'" quoting *LRX,*

21  *Inc. v. Horizon Associates Joint Venture ex rel. Horizon-ANF, Inc.*, 842 So.2d 881, 885 (Fla. App.

22  2003)); see also *Forsher v. Bugliosi*, 26 Cal.3d 792, 803 (1980) ("[T]he definition of libel has been held

23  to include almost any language which, upon its face, has a natural tendency to injure a person's

24  reputation," citing *Schomberg v. Walker*, 132 Cal. 224, 227 (1901); *MacLeod v. Tribune Publishing Co.*,

25  52 Cal.2d 536, 546 (1959); Prosser, Torts (4th ed. 1971) § 111, p. 739)).

26  _____

27  [45]Although defendants deny that the email implied anything regarding Berger's competence, they
28  tacitly concede that the communication could be interpreted in this email by disputing the validity of
Berger's performance reviews and qualifications.  (Def.'s Opp. at 3, 9).

In determining whether a writing is defamatory, the court considers whether a defamatory meaning could reasonably be implied from the explicit or implicit language in the communication. *Cameron v. Wernick*, 251 Cal.App.2d 890, 893 (1967); see also *Forsher*, 26 Cal.3d at 792, 803 (1980). The fact that "some person might, with extra sensitive perception, understand such a [defamatory] meaning cannot compel th[e] court to establish liability at so low a threshold. Rather, the test . . . is whether by reasonable implication a defamatory meaning may be found in the communication." *Forsher*, 26 Cal.3d at 806 (1980); see *Mullins v. Thieriot*, 19 Cal.App.3d 302, 304 (1971); see also *Mullins v. Brando*, 13 Cal.App.3d 409, 414-15 (1970).

Devereaux's email concerning "West Region HR" is two sentences long. The first sentence states that Berger "will no longer be employed as the West Regional Human Resources Representative."[46] The next sentence identifies the individual whom staff should contact regarding HR concerns "[u]ntil we are able to hire a more experienced HR Professional – ideally in the West Region – who would be capable of directing the HR system for our entire organization."[47] The parties dispute whether the email can reasonably be interpreted as defamatory.

Berger alleges that Devereaux's email was defamatory *per se* (that is, explicitly defamatory) or that, at the very least, it was defamatory through implication or innuendo.[48] Berger contends that Devereaux's email "impugned [his] reputation by imputing him with incompetence."[49]

---

[46]Devereaux Removal Decl., Exh. 1.

[47]*Id.*

[48]Complaint, ¶ 35; see CAL. CIV. CODE § 45a (defamation *per se* is "[a] libel which is defamatory of the plaintiff without the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic fact, is said to be a libel on its face."); *Babcock v. McClatchy Newspapers*, 82 Cal.App.2d 528, 539 (1947) (interpreting California Civil Code § 45a as "merely enact[ing], in code form, the rule which has long been in force in [California].")

[49]Complaint, ¶ 33. Berger identifies seven former coworkers at HED who allegedly believed that the email implied Berger had performed poorly in his job or was "unprofessional." (Berger Decl., ¶¶ 4-8). Berger asserts, for example, that Richard Bevan, HED's office manager in San Diego, said the email suggested he was not competent. (*Id.*, ¶ 4). Gary Goldblum, an associate in the Higher Education Studio, reportedly told Berger via telephone that "the email was the most disgusting email he had seen go out since working there, and it was suggesting that [plaintiff] was unprofessional and could not do [his] job. (*Id.*, ¶ 5). Similarly, plaintiff asserts that Molly Scanlon, an associate in Health Care Studio

1  Defendants counter that the statement could not reasonably be seen as defamatory because the

2  email was a statement of opinion that does not explicitly state or imply that Berger was incompetent.[50]

3  They characterize the email as expressing Devereaux's opinion that HED needed a more experienced

4  employee for a different HR position.[51]  Statements of opinion are generally not defamatory because a

5  reasonable person would not believe that one's opinion was a defamatory statement of fact.  See

6  *Franklin v. Dynamic Details, Inc*., 116 Cal.App.4th 375, 385 (2004) ("[T]he dispositive question is

7  whether a reasonable fact finder could conclude the published statement declares or implies a provably

8  false assertion of fact" (citations omitted)); see also *Weller v. American Broadcasting Companies., Inc.*,

9  232 Cal.App.3d 991, 1000-01 (1991).  Devereaux contends that he did not intend the email to be

10  defamatory, but meant simply to inform employees of the staff change and identify the individual whom

11  they should contact regarding HR issues until a new employee could be hired.[52]

12  Defendants also assert that Berger has no genuine support for his allegation that others

13  interpreted the email as defamatory.  They provide signed declarations from three of the seven

14  employees whom plaintiff claims believed the email impugned his competence.  Ramsis Elfiki and Luis

15  Porto expressly deny that they told Berger they believed the email accused him of being unprofessional

16

17

18  _____

19  Leadership in San Diego, told him that the "email made her think [he] had done something very wrong
that had warranted [his] immediate termination, such as a grievance against the firm or an employee."
(*Id*., ¶ 6).

20  Defendants object to these statements as inadmissible hearsay.  (See Def.'s Objections, ¶¶ 2-6).

21  Hearsay is an out-of-court statement offered to prove the truth of the matter asserted.  FED.R.EVID. 801.
Plaintiff offers the statements of other HED employees for the truth of the matters asserted – i.e., that

22  they understood Devereaux's email to be defamatory because it suggested that Berger was incompetent
or unprofessional.  Defendants' objection is therefore sustained and the court will not consider these

23  statements in ruling on the motion to remand. Cf. *McDowell Welding & Pipefitting, Inc. v. U.S. Gypsum

24  Co.*, 285 B.R. 460, 467 (D. Or. 2002) (striking hearsay evidence in ruling on motion to remand); *Doe
v. Bolkiah*, 74 F.Supp.2d 969, 972 (D. Haw.1998) (declining to consider materials containing hearsay

25  statements in deciding motions to remand).

26  [50]Def.'s Opp. at 6.

27  [51]Deveraux Removal Decl., ¶ 4.

28  [52]Devereaux Decl., ¶ 10.

13

1 or of not doing his job well.[53]  Richard Bevan, the San Diego office manager, does not expressly deny

2 that he said the email suggested Berger was not competent; rather, he states that he said he was surprised

3 by Berger's termination, and wished him the best of luck.[54]

4 　　　　"'Whether a statement declares or implies a provably false assertion of fact is a question of law

5 for the court to decide, unless the statement is susceptible of both an innocent and a libelous meaning,

6 in which case the jury must decide how the statement was understood.'" *Ruiz v. Harbor View*

7 *Community Ass'n*, 134 Cal.App.4th 1456, 1471 (2005) (quoting *Franklin*, 116 Cal.App.4th at 385).

8 Although the court does not consider Berger's assertion that HED employees believed the email was

9 defamatory, it is nonetheless unpersuaded by defendants' argument that Devereaux's email could not

10 reasonably be viewed as having a defamatory meaning.  First, the court does not credit defendants'

11 argument that the email was nothing more than a statement of Devereaux's opinion.  Given that

12 Devereaux sent the email to employees in his capacity as HED's president, reasonable employees

13 receiving the email would have understood it to be more than a statement of Devereaux's personal

14 opinion; they would have viewed it as a communication from management.

15 　　　　Furthermore, defendants fail to adduce evidence that employees who received the email did *not*

16 perceive it be defamatory; they simply seek to refute Berger's claims that others *told* him they found it

17 defamatory.  Given the fact that the email both announced Berger's "immediate" departure and indicated

18 that HED needed an employee who was "more experienced" and "capable," the email could reasonably

19 be interpreted as defamatory.[55]  The proximity of the statements in the same, two sentence, paragraph

20 suggests a causal link between Berger's termination and HED's desire for a "more experienced" HR

21 employee.  In addition, the position Berger had held – "West Region Human Resources Representative"

22 – sounds quite similar to the position defendants sought to fill – "HR Professional – ideally in the West

25 　　　　[53]Declaration of Ramsis Elfiki ("Elfiki Decl."), ¶ 2; Declaration of Luis Porto ("Porto Decl."),
26 ¶ 2.

27 　　　　[54]Declaration of Richard G. Bevan ("Bevan Decl."), ¶ 3.

28 　　　　[55]Devereaux Decl., Exh. 1.

14

Region."[56]  An average reader, therefore, could conclude that Devereaux wanted to fill Berger's position with a new employee because he was not sufficiently experienced and/or was not capable of doing his job.[57]  Certainly, a jury could draw these inferences without employing "extra sensitive perception" or "scrutinizing" the text of the email.  *Cf. Forsher,* 26 Cal.3d at 803, 806 (stating that the court should not find libel that is obvious only by using "extra sensitive perception" or "scrutinizing").      Because Devereaux's email contains statements susceptible of both an innocent and a libelous meaning, whether it is defamatory is a question of fact that must ultimately be resolved by a jury.   At this stage of the proceedings, the court must resolve all disputed questions of fact in favor of the party seeking remand. Berger, therefore, has established that he has a possibility of succeeding on this element of his claim.

### 4.        Unprivileged Statements

The unprivileged information element is established when the allegedly defamatory statement is not protected by any privilege.  Defendants argue that the statements in Devereaux's email are protected by the "common interest" privilege,[58] which permits individuals to communicate, without malice, information to interested parties.  CAL. CIV. CODE § 47(c).  Individuals who "stand[ ] in relation" to an interested party are also privileged.  *Id.*  "[T]o be protected [under the common interest privilege,] the communication must be one 'reasonably calculated to further [the common] interest.'"  *Cuenca v. Safeway S.F. Employees Fed. Credit Union*, 180 Cal.App.3d 985, 995 (1986) (quoting *Kelly v. General Telephone Co.*, 136 Cal.App.3d 278, 285 (1982)).

An employer and its employees have a common interest in the identity of the company's HR staff.  Employer's statements to employees regarding the reasons for termination of another employee, moreover, are generally privileged. See *King v. United Parcel Service, Inc.*, 152 Cal.App.4th 426, 440-41 (2007); *Kashian v. Harriman,* 98 Cal.App.4th 892, 913, 930-31 (2002) (individuals with a contractual or business relationship to one another generally have a common interest for defamation

---

[56]*Id.*

[57]*Id.*

[58]Def.'s Opp. at 10.

1   claim purposes); *Cuenca*, 180 Cal.App.3d at 995-96.

2       A defendant bears the initial burden of demonstrating that an allegedly defamatory

3   communication is shielded by the common interest privilege.  *Lundquist v. Reusser*, 7 Cal.4th 1193,

4   1203-04 (1994).  Once defendant has made this showing, the burden shifts to the plaintiff to overcome

5   the privilege by a showing of malice or over publication of the communication to non-interested parties.

6   *Id.*; *King v. United Parcel Service, Inc.*,152 Cal.App.4th 426, 441-42 (2007); see also *Institute of*

7   *Athletic Motivation v. University of Illinois*, 114 Cal.App.3d 1, 12 (1980) ("Determination that a

8   privilege exists under section 47, subdivision 3 does not, of course, provide carte blanche for reckless

9   or improperly motivated attacks on people's reputations.  The occasion for the privilege 'may be abused

10  and the protection of the privilege lost, by the publisher's lack of belief, or of reasonable grounds for

11  belief, in the truth of the defamatory matter, by excessive publication, by a publication of defamatory

12  matter for an improper purpose, or if the defamation goes beyond the group interest,'" quoting *Emde*

13  *v. San Joaquin County Central Labor Council*, 23 Cal.2d 146, 154-55 (1943), and citing *Brewer v.*

14  *Second Baptist Church*, 32 Cal.2d 791, 797 (1948)).

15      Defendants argue that Devereaux's email is privileged because he prepared the email solely for

16  business purposes and did not send it to non-HED employees.[59]  Defendants maintain that, given

17  Berger's departure, the email was necessary to inform HED's California employees of the identity of

18  the individual they should contact regarding personnel issues.[60]  They also assert that the email's content

19  about defendants' need for a more experienced HR professional profession was true, and that they

20  subsequently hired an HR employee with "significantly more work related experience" than Berger.[61]

21  Given the circumstances, defendants argue, the evidence does "not give any indication" that Devereaux

22  acted maliciously in preparing and sending the email.[62]

23      While these arguments may support a finding that the email is privileged, Berger alleges that

---

25  [59]*Id.*

26  [60]*Id.*

27  [61]*Id.*

28  [62]*Id.*

Devereaux sent the email with malice and that it was over published to non-interested parties.[63]  Malice is "'a state of mind arising from hatred or ill will, evidencing a willingness to vex, annoy or injure another person.  Thus the privilege is lost if the publication is motivated by hatred or ill will toward plaintiff, or by any cause other than the desire to protect the interest for the protection of which the privilege is given.'"  *SDV/ACCI, Inc.*, 522 F.3d at 962 (quoting *Cabanas v. Gloodt Assocs.*, 942 F.Supp. 1295, 1301 n. 7 (E.D. Cal. 1996)).  The fact that a communication is motivated by more than just the desire to protect the common interest on which the privilege is based will support a finding of malice.  *Cabanas*, 942 F.Supp. at 1301 n. 7.  Malice "may also be established by showing that defendants 'lacked reasonable grounds to believe the statement true and therefore acted with reckless disregard for plaintiff's rights.'"  *Id.* (quoting *Cuenca*, 180 Cal.App.3d at 997).

Berger alleges that Devereaux acted with malice in sending the email, asserting that the fact it was distributed to one hundred employees and at least one non-employees shows it was sent with unjustified "animosity."[64]  Berger has not submitted admissible evidence that non-HED employees received the email.  Defendants, however, have not demonstrated that non-HED parties did *not* receive the email.  As Berger notes, the email was sent to all employees in HED's California offices, and was not marked confidential.[65]  Even if an employee forwarded the communication to a non-employee without defendants' authorization, as the original publishers they might still be liable if they had reason to expect the repetition.  See *Gonsalves v. Conseco Ins. Co.*, Civ 06-0058 WBS KJM, 2006 WL 1409365, *3-4 (E.D. Cal. May 22, 2006) (holding that each republication of a defamatory statement creates a new cause of action against the original defamer and that foreseeable republication to non-

---

[63]Complaint, ¶ 38; Pl.'s Mot. at 11.

[64]Pl.'s Reply at 4.  Berger argues that the email was sent to non-employees of HED because his former supervisor, Derrick Washington, told Berger he received the email on the day it was sent.  (Berger Decl., ¶ 9).  Berger contends Washington said that the Chief Operating Officer had wanted to fire Berger for "a while" because he insisted on compliance with California law.  (*Id.*)  Defendants object to these statements on hearsay grounds.  Because plaintiff offers these statements for the truth of the matters asserted – i.e., that Washington received the email and knew of HED's plans to terminate plaintiff – the court sustains the objection.

[65]Pl.'s Mot., Declaration of Jeff Berger ("Berger Decl.") ¶ 9; Objections to Portions of Declaration of Peter Devereaux, ¶ 4.

interested parties raises a triable issue of fact as to whether the statement is covered under Cal. Civ. Code § 47(c) common interest privilege); *Schneider v. United Airlines*, 208 Cal.App.3d 71, 75 (1989) (holding that defamer was liable for the republication of the defamatory statement to third parties). Because the email stated that HED sought a "more experienced" and "capable" HR professional, and did not state that its contents were confidential, it was arguably foreseeable that the email would be forwarded to persons outside HED who might be interested in, or know of others interested in, the HR position.

Although at the present time, Berger is unable to present evidence directly showing that Devereaux acted with malice, he has alleged facts giving rise to an inference of malice, which is sufficient to defeat defendants' claim to the common interest privilege.[66] Cf. *Chew v. Williams Lea Inc*., C 07-3525 CRB, 2007 WL 2428052, *3 (N.D. Cal. Aug. 22, 2007) ("Assuming, without deciding, that plaintiff has not sufficiently alleged facts showing actual malice or that Dolly lacked a good-faith belief in the truth of the statement, defendant has not shown that plaintiff could not as a matter of law allege such facts. To the contrary, the complaint's allegations suggest that plaintiff could explicitly allege that

---

[66]While the court can consider summary judgment-type evidence in assessing the propriety of a fraudulent joinder claim, ultimately, the standard it must apply is closer to a Rule 12(b)(6) standard. See *McKee*, 358 F.3d at 334; see also *Christensen v. Phillip Morris, Inc.*, 198 F.Supp.2d 713, 715 (D. Md. 2002) (in considering evidence outside the pleadings for purposes of assessing whether a defendant's joinder is fraudulent and remand is appropriate, the court may not "delv[e] too far into the merits. . ."); see also *Oxendine v. Merck and Co., Inc.*, 236 F.Supp.2d 517, 525 (D. Md. 2002) ("In determining whether fraudulent joinder exists, the district court is 'not bound by the allegations of the pleadings, but may instead consider the entire record, and determine the basis of joinder by any means available.'. . .   That does not, however, license the court to engage in extensive fact finding or 'delve too far into the merits in deciding a jurisdictional question,'" quoting *Hartley v. CSX Transportation, Inc*., 187 F.3d 422, 424 (4th Cir. 1999)); *Charter Communications v. Harry Bourg Corp*., Nos. Civ.A. 02-2652, Civ.A. 02-2755, 2002 WL 31409457, *1 (E.D. La. Oct. 23, 2002) ("The Court should *not* pre-try the case, but can pierce the pleadings and consider summary judgment-type evidence to determine fraudulent joinder" (emphasis original)); *Vogt v. Time Warner Entertainment Co., L.P*., No. CIV. A. 01-905, 2001 WL 360058, *1 (E.D. Pa. Apr. 3, 2001) ("'[W]hile issues of liability may not ordinarily be determined on a motion to remand, it is well settled that upon allegations of fraudulent joinder designed to prevent removal, federal courts may look beyond the pleadings to determine if the joinder, although fair on its face, is a sham or fraudulent device to prevent removal.' . . . However, such piercing must be limited to circumstances . . . where the Court reached outside the pleadings to consider an affidavit that completely divorced the challenged defendant from the allegations and left no doubt that the defendant was improperly joined," quoting *Smoot v. Chicago, Rock Island & Pacific R.R. Co.*, 378 F.2d 879, 881-82 (10th Cir. 1967)).

1   Dolly lacked a good faith belief in her statements given her failure to make any inquiry of plaintiff into

2   what – from the allegations of the complaint – appears to be a minor discrepancy.  Moreover, the

3   implied allegation of retaliation because of plaintiff's disability leave further suggests malice.  In sum,

4   this is not a case where a plaintiff cannot under any circumstances make a claim against the non-diverse

5   defendant.  Accordingly, Dolly was not 'fraudulently joined' and the motion to remand must be

6   granted").

7                      **5.      Natural Tendency to Injure or to Cause Special Damages**

8           The final element of a defamation claim is whether the alleged defamatory statements have a

9   natural tendency to injure plaintiff or cause special damages.  This "tendency to injure" element requires

10  that plaintiff's property, business, trade, profession, or occupation have been damaged; money expended

11  as a result of the alleged defamation is a cognizable form of damage.  CAL. CIV. CODE § 48a(4)(b).

12  Berger alleges that his reputation in a professional field in which he has worked for at least six years has

13  been damaged.[67]  Since all of HED's California-based employees – who necessarily include managers

14  and other staff – received Devereaux's email, the communication, if defamatory, could likely have

15  caused reputational injury.  Although Berger has not adduced admissible evidence showing that others

16  who read the email understood that Devereaux was impugning his competence, it is a reasonable

17  inference that, if defamatory, the email reflected negatively on Berger's reputation as an HR

18  professional.

19          At the pleadings stage, an allegation that plaintiff has been injured in his profession, occupation,

20  or trade is sufficient even if the full extent of his damages is not yet ascertainable.  See *Forsher v.*

21  *Bugliosi*, 26 Cal.3d 792, 807 (1980) ("Appellant should have been able to plead injury to property,

22  business, trade, profession or occupation, if these interests have been injured even though the monetary

23  extent might not have been ascertainable.  Unless there is a special damage as defined by Civil Code

24  section 48a, no cause of action [for defamation *per se*] arises," citing *Thieriot*, 19 Cal.App.3d at 304).

25  Berger's allegations suffice to show that there is a possibility he can establish that the email had a

26  natural tendency to injure him in his occupation.

27  _____

28          [67]Complaint, ¶ 34.

1  In sum, Berger has shown a possibility that he can prove the elements of a claim for defamation

2  against Devereaux in his individual capacity.  Devereaux is therefore not a sham defendant.  See *Burden*

3  *v. General Dynamics Corp.*, 60 F.3d 213, 216 (5th Cir. 1995) ("If the plaintiff has any possibility of

4  recovery under state law against the party whose joinder is questioned, then the joinder is not fraudulent

5  in fact or law").

6  **D.    Managerial Immunity**

7  Defendants argue that even if Berger has successfully stated a defamation claim against

8  Devereaux, Devereaux cannot be liable because he is protected by managerial immunity.[68]  Defendants

9  argue that in California, individuals who act as agents for their employers cannot be sued personally for

10  allegedly discriminatory or harassing conduct committed within the scope of their employment.[69]

11  Defendants are correct that individual managers and supervisors cannot be held liable for discrimination

12  and retaliation under California's Fair Employment and Housing Act ("FEHA").  See *Jones v. Lodge*

13  *at Torrey Pines Partnership*, 42 Cal.4th 1158, 1160 (2008); *Reno v. Baird*, 18 Cal.4th 640, 645 (1998).

14  They provide no authority, however, stating that managerial immunity extends beyond FEHA claims

15  to negate individual liability for common law defamation. Cf. *Reno*, 18 Cal.4th at 643 ("Our

16  conclusion also applies to common law actions for wrongful discharge").

17  In determining whether joinder is fraudulent, the question is whether plaintiff has failed to

18  state a cause of action against the non-diverse defendant, *and* that failure is obvious under settled

19  state law.  *Morris*, 236 F.3d at 1067.  Given that state law is not settled as to whether managerial or

20  supervisory immunity extends beyond FEHA claims for discrimination or retaliation, the court

21  cannot find as a matter of law that Berger's claims against Devereaux are precluded.

22  **E.    Whether Removal Was Proper**

23  Having concluded that there is a possibility Berger can prevail on his defamation claim against

24  Devereaux, and that Devereaux is not a sham defendant, the court must next consider whether

25

26  [68]Def.'s Opp. at 11.

27  [69]*Id.* (citing *Jones v. The Lodge at Torrey Pines Partnership*, 42 Cal.4th 1158 (2008); *Reno v.*

28  *Baird*, 18 Cal.4th 640 (1998); *Janken v. GM Hughes Electronics*, 46 Cal.App.4th 55 (1996)).

1   Devereaux's citizenship destroys complete diversity.  As defendants concede, Devereaux and Berger

2   are both citizens of California.[70]  As a result, removal was improper and the action must be remanded

3   to state court.  *Cavallini*, 44 F.3d at 259 ("The removing party must prove that there is absolutely

4   no possibility that the plaintiff will be able to establish a cause of action against the in-state

5   defendant in state court . . . ," quoting *Green*, 707 F.2d at 205); *Dodson*, 951 F.2d at 42-43.

6   **F.   Whether Plaintiff Is Entitled to Attorney's Fees and Costs**

7   28 U.S.C. § 1447(c) provides that if a case is remanded, the court may order the "payment

8   of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."

9   Berger seeks $6,000 in attorney's fees and costs for the time his counsel spent preparing the remand

10  motion.[71]

11  As the Supreme Court has explained, "the standard for awarding fees [under § 1447(c)]

12  should turn on the reasonableness of the removal.  Absent unusual circumstances, courts may award

13  attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable

14  basis for seeking removal.  Conversely, when an objectively reasonable basis exists, fees should be

15  denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005); see also  *Pucci v. Rent*

16  *A-Center, Inc.*, 81 Fed.Appx. 948, 949 (9th Cir. Nov. 21, 2003) (Unpub. Disp.) ("The record reflects

17  that Rent-A-Center had an arguable basis for removal, and that its notice of removal was neither

18  unreasonable nor frivolous.  Therefore, the district court acted within its discretion in denying

19  appellants' motion for attorney fees"); *Lester v. Silk,* No. C 04-4690 SI, 2005 WL 418537, *3 (N.D.

20  Cal. Feb. 18, 2005) ("Given that there was a non-trivial issue concerning Title VII preemption of

21  the state tort law claims against the individual defendants and that this case is related to a pending

22  federal case, it was not unreasonable for defendants to remove.  Consequently, the Court [denies]

23  plaintiff's motion for attorney's fees and costs"); *Capretto v. Stryker Corp.*, C 07-03390 WHA, 2007

24  WL 2462138, *4 (N.D. Cal. Aug. 29, 2007) (denying a request for attorney's fees after granting a

25  motion to remand because defendant's arguments regarding the propriety of removal were "not

26  _____

27  [70]Complaint, ¶¶ 1-6; Notice of Removal Action, ¶ 6.

28  [71]Pl.'s Mem. at 10.

unfounded"); *Calero v. Unisys Corp.*, 271 F.Supp.2d 1172, 1182 (N.D. Cal. 2003) ("This court finds that an award of costs and fees is not warranted in this case, given that the removal was based on reasonable and supported interpretation of unsettled California law"). There is no presumption in favor of or against an award of fees and costs in cases that are remanded. *Martin*, 546 U.S. at 136-37.

Defendants' decision to remove the action was not objectively unreasonable. With the exception of the publication element of Berger's defamation claim, the parties presented conflicting evidence regarding each other component of the claim. Given the number of factual disputes surrounding the defamation claim, defendants had an objectively reasonable basis for asserting that Devereaux's joinder was fraudulent. For this reason, the court declines to award plaintiff attorney's fees and costs.

### III.  CONCLUSION

For the reasons stated, the court grants plaintiff's motion to remand, and directs the clerk to remand the action forthwith to Los Angeles Superior Court. The court denies plaintiff's request for attorney's fees and costs.

DATED:  June 6, 2008

_____
MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE